IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROSEMARY BUEHLER,

                       Plaintiff,                     OPINION AND ORDER

     v.

                                                   08-cv-732-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This is an action for judicial review of a decision of the Commissioner of Social

Security, denying plaintiff Rosemary Buehler's application for disability insurance benefits

under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d).

Buehler is a 45-year-old woman who has degenerative disc disease in her cervical spine and

chronic pain syndrome.  After working for several years as a line worker in a pizza factory,

she quit in September 2003, after her treating doctor restricted her to sedentary work with

no repetitive use of her right upper extremity.  The following year, she applied for disability

benefits, alleging disability as of September 26, 2003.  That application was denied.  Instead

of appealing the denial, she filed a second application in March 2005, alleging the same date

(September 26, 2003) for the onset of disability.  The local disability office denied this

application.  This time, plaintiff appealed the denial and requested a hearing before an administrative law judge.

At the hearing, the administrative law judge denied plaintiff's request to reopen her prior application, holding that the earliest date on which plaintiff could establish she was disabled in the proceeding before him was December 15, 2004, the date on which her first application was denied.  The administrative law judge subsequently issued a decision finding plaintiff not disabled because she remained capable of performing a full range of light work, which allowed for the performance of numerous jobs existing in the regional economy. Plaintiff now appeals that decision pursuant to 42 U.S.C. § 405(g).

Plaintiff argues primarily that the administrative law judge did not give enough weight to the opinion of Dr. Owens, the treating physician who in 2003 had restricted plaintiff to sedentary work with no repetitive use of her right upper extremity, or to the opinions of the state agency consultants who reviewed plaintiff's first application and found her to have greater limitations than found by the administrative law judge.  However, the agency had considered these opinions when it denied plaintiff's first application.  As a result, principles of *res judicata* precluded the administrative law judge from relying on this evidence to find plaintiff disabled unless there was new evidence to show that plaintiff's condition had deteriorated after the denial of her first application.  Although the record before the administrative law judge did include new evidence, he found that it showed that plaintiff's

2

condition had improved rather than worsened after Owens and the state agency physicians had formed their opinions.  Substantial evidence in the record supports this conclusion.

Plaintiff contends that the administrative law judge did not properly consider whether plaintiff's mental impairment met or equaled the listed impairment of a somatoform disorder.  Because the administrative law judge properly found that plaintiff did not have a severe mental impairment, he did not need to determine whether it met or equaled a listed impairment.  Further, the record lacks sufficient medical evidence to support her contention that she met the criteria of the listing for somatoform disorder.

Finally, plaintiff contends that the administrative law judge erred in assessing her credibility.  I find that the administrative law judge properly considered the medical evidence and relevant factors in determining that plaintiff's statements concerning her pain and limitations were not entirely credible.

For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A. Background and Procedural History

Plaintiff was born on February 28, 1964. She completed high school and had additional technical college training, including training in 2004 and 2005 as an office assistant. She had past relevant work as a line worker in a pizza factory. AR 21, 944.

Plaintiff first applied for disability insurance benefits in May 2004, alleging disability as of September 2003 because of back and skin problems. AR 88. This application was denied in an initial decision without a hearing on December 15, 2004. Plaintiff did not appeal this decision. AR 16.

Plaintiff filed a new application for disability insurance benefits on March 3, 2005, again alleging disability as of September 2003. AR 16. After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on December 5, 2006 before Administrative Law Judge Stephen J. Ahlgren.[1] The administrative law judge heard testimony from plaintiff. The administrative law judge declined to reopen plaintiff's prior application. AR 923-54. On July 20, 2007, the administrative law judge issued his decision, finding plaintiff not disabled. AR 16-22. This decision became the final decision of the commissioner on October 15, 2008, when the Appeals Council denied plaintiff's request for review. AR 4-6.

---

[1]Although the hearing transcript states that the hearing was held on October 5, 2007, the hearing was held on December 5, 2006. AR 16.

B.  Medical Evidence

1.  Evidence prior to December 15, 2004

Plaintiff suffered a wrist injury in January 1997 while working at Tombstone Pizza. AR 365.  An October 8, 1998, magnetic resonance imaging scan of plaintiff's cervical spine showed minor early central disc protrusion at C5-C6 and to a lesser extent at C6-C7.  AR 412.  An October 15, 1998 electromyogram showed no evidence of cervical radiculopathy or brachial plexopathy.  She was returned to work at a medium exertional level.  AR 437.

On May 9, 2001, plaintiff was seen by Dr. David Winemiller, a psychologist.  He diagnosed a pain condition with medical and psychological factors.  AR 757.

On October 6, 2003, plaintiff saw Dr. Lester Owens, a physical medicine and rehabilitation specialist, who diagnosed cervicobrachialgia involving the right upper extremity aggravated by overuse and myofascial pain syndrome.  He returned her to work at a sedentary level with no repetitive use of the right upper extremities for lifting, pushing or pulling.  AR 481.  On October 20, 2003, Owens gave plaintiff steroid injections.  Plaintiff noted no improvement in her condition after the injections.  AR 470.

On October 20, 2003, Owens wrote a letter to plaintiff's employer stating that plaintiff would have long-term permanent sedentary work restrictions with no use of the right upper extremity above shoulder level and no repetitive pushing, pulling or lifting with

the right upper extremity.  He also indicated that she could stand no more than five hours, walk four hours and sit eight hours in an eight-hour work day.  AR 466.

On December 2, 2003, Owens saw plaintiff and indicated that she should be continued at the prior sedentary work restrictions but that she was capable of standing with her foot orthotics up to eight hours a day.  AR 461.  On December 16, 2003, Owens saw plaintiff again and continued her restrictions.  AR 457.

On January 28, 2004, occupational therapist Vivian Gamble evaluated plaintiff. Plaintiff reported being able to do four hours of housework before needing a rest of 30 to 60 minutes.  She reported that she had no problem lifting a small bag of groceries but that she could not lift a 50-pound water softener salt block.  She also indicated that she avoided repetitive use of her right arm for such things as chopping and slicing.  AR 748.  Gamble observed that plaintiff did not demonstrate any overt pain behaviors.  AR 749.

That same day, plaintiff was evaluated by physical therapist Monte Wilkom.  Plaintiff reported that she was not limited at home regarding functional activities and performed full housekeeping duties without assistance.  AR 751.  She reported she had been placed on a 10-pound lifting restriction.  Wilkom did not notice any behaviors indicating that plaintiff was in pain.  AR 752.  Plaintiff was able to lift 40 pounds from floor to waist and 30 pounds from waist to crown.  AR 753.

On July 13, 2004, Dr. Jonathon Reeser completed a report stating that plaintiff had been placed on permanent sedentary work restrictions by Owens.  AR 593.  On July 14, 2004, state agency physician Michael J. Baumblatt found that plaintiff could perform sedentary work.  AR 595-603.  On December 9, 2004, state agency physician Pat Chan found that plaintiff could perform light work with no frequent use of her right arm, explaining that plaintiff had reported improvement since October 2003 when Owens had limited her to sedentary work.  AR 644.

2.  Evidence after December 15, 2004

On January 3, 2005, plaintiff saw Dr. Alexander E. Yakovlev at the Marshfield Pain Management Clinic.  She reported that her pain was reasonably controlled by Neurontin.  On examination, Yakovlev noted that plaintiff had no trigger points, but he diagnosed her with fibromyalgia and chronic pain syndrome.  AR 686.  On February 25, 2005, plaintiff called Yakovlev to report that her pain was under better control.  AR 684.

On January 25, 2005, plaintiff had an annual physical exam performed by Kathryn Hemer.  Plaintiff was taking Neurontin, amytriptyline and ibuprofen.  On examination, Hemer found that plaintiff had adequate range of motion and strength in the upper and lower extremities and appeared to use her right arm the same as she used her left arm.  Hemer noted that plaintiff's depression and anxiety were controlled by amytriptyline and

7

that her chronic right upper arm and neck pain was controlled to some degree by Neurontin. AR 647-50.

On March 14, 2005, plaintiff was evaluated at the Marshfield Clinic for acceptance into its pain management program. Plaintiff reported that she was on long term disability that she would lose if she did not continue to go to school. Her disability was to end in March 2006. An occupational therapist noted that plaintiff did not exhibit any excessive pain behavior other than guarding of her right upper extremity. AR 678. A physical therapist noted that plaintiff complained inconsistently of pain at some of the fibromyalgia points, reporting more pain on the left than on the right. On physical examination, plaintiff had fairly good range of motion and strength, which the therapist noted was inconsistent with her considerable pain complaints. The therapist recommended that plaintiff be accepted into the pain management program, although she noted that plaintiff had "other litigation issues" that might interfere with her compliance. AR 681-82.

On March 7, 2006, plaintiff had her yearly physical performed by Hemer. Plaintiff reported having turned down the recommendation of the Marshfield pain clinic that she participate in a chronic pain program. Hemer diagnosed plaintiff with chronic right shoulder, neck, arm and leg pain and depression and anxiety. On examination, Hemer noted that plaintiff had adequate range of motion in the upper and lower extremities with some

mild tenderness in the right cervical region.  Hemer continued plaintiff's prescriptions for

Neurontin for chronic pain and amytriptyline for depression and anxiety.  AR 886-88.


## C.  Consulting Physicians

On April 6, 2005, state agency consulting physician Dr. Michael Baumblatt assessed

plaintiff's physical residual functional capacity.  He concluded that plaintiff could lift 10

pounds frequently and 20 pounds occasionally; stand or walk six hours in an eight-hour work

day; and sit six hours in an eight-hour work day with no postural limitations.  AR 840-47.

On July 18, 2005, state agency physician Dr. Pat Chan reviewed the evidence and affirmed

Baumblatt's assessment.  AR 866.

On April 11, 2005, state agency psychologist Keith Bauer reviewed plaintiff's medical

records and found she did not have any severe mental impairment.  AR 848-61.  On July 1,

2005, state agency psychologist Jack Spear affirmed Bauer's assessment.  AR 867.


## D.  Hearing Testimony

Plaintiff testified that she had recently attended technical college to obtain an office

assistant certificate but that she had constant pain during that time.  AR 928-29.  She

testified that, after she obtained her certificate, she looked for employment and found a job

as a cashier at K-Mart.  She worked at K-Mart for a month before the pain became too much

to endure.  AR 930.  She testified that she also worked in an office for about a month after that but quit that job because of the pain.  AR 931.

Plaintiff testified that she had worked at Tombstone Pizza from February 1997 to October 2003 but had stopped working there after her doctor placed permanent working restrictions on her.  AR 932-33.  She testified that she had constant pain in her neck, right arm and right leg.  AR 934.  Plaintiff testified that the pain had gradually been getting worse and was worse with activity.  AR 937.  She testified that she cared for her children, ages 10 and 12, cooked, cleaned and shopped for groceries.  AR 938.  She said that she is able to drive but that driving long distances bothers her.  AR 939.

### E.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step analysis.  20 C.F.R. § 404.1520.  Under this test, the administrative law judge sequentially considers 1) whether the claimant is currently employed; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1; 4) whether the claimant can perform his past work; and 5) whether the claimant is capable of performing work in the national economy.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).  If a claimant satisfies steps one through three, he is automatically found to be

disabled.  If the claimant meets steps one and two, but not three, then he must satisfy step four.  Id.  The claimant bears the burden of proof in steps one through four.  If the claimant satisfies step four, the burden shifts to the commissioner to prove that the claimant is capable of performing work in the national economy.  Id.

At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since September 26, 2003.  At step two, he found that plaintiff had severe impairments of myofascial and myalgia pain syndrome and degenerative disc disease in the cervical spine, but did not have a medically determinable mental impairment.  AR 18. At step three, the administrative law judge found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1.  AR 19.

The administrative law judge determined that plaintiff had the residual functional capacity to perform the full range of light work and that she was capable of performing semiskilled to skilled work.  AR 19.  At step four, the administrative law judge found that plaintiff could not perform her past relevant work.  AR 21.  At step five, he found that because plaintiff could perform the full range of light work, her application could be decided by direct application of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 (often referred to as "the grids"). Using the guidelines, the administrative law judge found that plaintiff was not disabled.  AR 21.

11

OPINION

A. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a

12

logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

### B.  Treating Physician's Opinion

Plaintiff contends that the administrative law judge erred in not giving Owens's opinion controlling weight and in not considering the 2004 opinions of the state agency physician and psychologist.  (She also argues that the administrative law judge failed to consider a July 13, 2004 report from Dr. Reeser, but Reeser merely stated in that report that plaintiff had been placed on permanent sedentary work restrictions by Owens.  Accordingly, there is no reason to give separate consideration to Reeser's report.)  As the commissioner points out, in focusing on this evidence, which was before the agency when it considered her prior application, plaintiff ignores the preclusive effect of the commissioner's December 2004 final decision on plaintiff's prior application.  "*Res judicata* bars subsequent applications for SSDI and SSI based on the same facts and issues the Commissioner previously found to be insufficient to prove the claimant was disabled."  Hillier v. Social Security Administration, 486 F.3d 359, 364 (8th Cir. 2007).  See also 20 C.F.R. § 404.957(c)(1) (administrative law judge may dismiss hearing request in part or entirely if agency has made final determination about disability on same facts and issues); Rucker v. Chater, 92 F.3d 492, 494 (7th Cir. 1996) ("Taken together, section 405(h) and other regulatory provisions embody the

13

fundamental and familiar principles of *res judicata*.") (citations omitted).  When a prior proceeding has been given *res judicata* effect in a second proceeding, the medical evidence from the initial proceeding cannot be reevaluated in the second proceeding.  Robbins v. Sec'y of Health and Human Services, 895 F.2d 1223, 1224 (8th Cir. 1990) (per curiam).  An exception to this rule exists where the claimant submits later evidence that, when considered in combination with the earlier evidence, shows that she had become disabled after the period covered by the first proceeding.  Groves v. Apfel, 148 F.3d 809, 810 (7th Cir. 1998).  Thus, to establish that she is entitled to benefits on the basis of her 2005 application, plaintiff cannot simply rely on the evidence she submitted with her prior application, but has to come forth with new evidence to show that her condition worsened after the date on which her 2004 application was denied.

Plaintiff argues that the commissioner is barred from asserting the bar of *res judicata* to the pre-December 2004 evidence because the administrative law judge did not mention the doctrine in his decision and instead considered Owens's opinion and other evidence in the record from plaintiff's first application.  In support of this argument, plaintiff cites Byam v. Barnhart, 336 F.3d 172 (2d Cir. 2003), but that case does not support plaintiff's position.  In Byam, the court cited the unremarkable principle that, where the commissioner "reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened," thereby making the constructively reopened decision subject to judicial

14

review.  Id. at 180.  Here, there is no indication that the administrative law judge was rendering a decision on the merits of plaintiff's earlier application, which alleged an onset date of September 26, 2003.  To the contrary, the administrative law judge found expressly that "there was no basis to reopen [the prior application] and that the earliest date upon which the claimant could base a disability claim is December 15, 2004," the date on which plaintiff's first application had been denied.  AR 16.  Although he reviewed plaintiff's medical records from before that date, he wrote that he was doing so "to evaluate the history of the claimant's alleged impairments."  AR 19.  Finally, in his ultimate finding denying plaintiff's claim, he found that plaintiff "has not been under a disability . . . from December 15, 2004 through the date of this decision."  AR 21.  Nothing in the decision suggests that the administrative law judge ruled on the merits of the earlier evidence or reopened plaintiff's first application.  Cf. Taylor for Peck v. Heckler, 738 F.2d 1112, 1115 (10th Cir. 1984) (finding constructive reopening where, among other things, administrative law judge did not "specifically decline to reopen the decision").  Further, it is undisputed that the propriety of the administrative law judge's decision not to reopen plaintiff's prior application is not subject to judicial review.  Johnson v. Sullivan, 936 F.2d 974, 976 (7th Cir. 1991) (refusal by commissioner to reopen final decision is discretionary and not subject to judicial review) (citations omitted).  Accordingly, to the extent plaintiff argues that the administrative law judge should have found her disabled on the basis of Owens's 2003 opinion or the 2004

15

opinions of the state agency consultants, her arguments are barred by *res judicata*.  For the same reason, I find that the administrative law judge did not err in failing to afford controlling or substantial weight to Owens's opinion or to mention the opinions provided by the state agency consultants when they considered plaintiff's first application.

Substantial evidence supports the administrative law judge's conclusion that plaintiff's condition appeared to have improved after Owens evaluated her in 2003.  As the administrative law judge noted, plaintiff was found to be able to lift 40 pounds from the floor and 30 pounds from her waist to the top of her head without pain, which tended to undermine Owens's opinion that plaintiff could lift only 10 pounds.  The administrative law judge also considered Hemer's January 25, 2005 examination of plaintiff.  At that time, plaintiff had adequate range of motion and strength in the upper and lower extremities, appeared to use the right arm the same as she used her left arm and indicated that her pain was being somewhat controlled by Neurontin.  He also considered the fact that in March 2006, Hemer again noted that plaintiff had adequate range of motion in the upper and lower extremities with only some mild tenderness in the right cervical region.  Records indicated that plaintiff had not been seen for a year before this visit and had turned down the recommendations  of the pain clinic, which tended to suggest that plaintiff's pain was not debilitating.  From this, the administrative law judge reasonably concluded that plaintiff had the residual functional capacity to perform a full range of light work, as found by the state

16

agency physicians in 2005.  In sum, I find that the administrative law judge properly evaluated both the old and the new medical evidence and did not err in failing to give any weight to the opinion of Owens or to the 2004 opinions of the state agency consultants, insofar as the agency had previously found such evidence inadequate to support an award of benefits.


## C.  Listed Impairment

Plaintiff contends that the administrative law judge erred in finding that plaintiff did not meet or equal the listing for somatoform disorders.  Further, she argues that the administrative law judge's analysis was flawed because he did not specify what listed impairments he considered at step three in finding that plaintiff's impairments did not meet or equal a listed impairment.  The Court of Appeals for the Seventh Circuit has held that remand may be required when an administrative law judge fails to discuss or even cite a listing and undertakes only a perfunctory analysis.  Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir. 2003).  However, in Brindisi, the court recognized that "even a 'sketchy opinion' is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning."  Id. at 787 (citation omitted).  It is always the plaintiff's burden to show that her impairments meet or medically equal a listing.  Sullivan

17

v. Zebley, 493 U.S. 521, 530-31 (1990); Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004); Clifford, 227 F.3d at 868.

Although the administrative law judge's analysis at step three is perfunctory, I can trace his reasoning.  AR 18.  At step two, the administrative law judge found that plaintiff did not have a severe psychological impairment.  He relied on the 2005 state agency psychologists' assessments for this conclusion.  Because he did not find that plaintiff had a severe mental impairment, he did not need to consider whether such an impairment met a listing. 20 C.F.R. § 404.1520(a).

Now plaintiff argues that her impairment met listing 12.07, Somatoform Disorder. To show that she meets this listing, she would have to adduce evidence showing not only that she meets the "Paragraph A" criteria  (history of multiple physical symptoms of several years duration beginning before age 30, that have caused her to take medicine frequently, see a physician often and alter life patterns significantly; persistent nonorganic disturbance of vision, speech, hearing, use of a limb, movement or sensation; or unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that she had a serious disease or injury) but also that she had had at least two of the "Paragraph B" criteria (marked or greater restrictions in activities of daily living, maintaining social functioning, or maintaining concentration, persistence or pace, or repeated episodes of decompensation for an extended duration).

Again, plaintiff attempts to establish disability by relying on evidence from her prior application for benefits.  Plaintiff points to behavioral health evaluations conducted in May 2001 and June 2004, in which "psychological factors" were found to play a role in plaintiff's pain, and to the 2004 evaluation by a state agency psychologist, who found that plaintiff had a somatoform disorder.  AR 620, 691, 757.  As discussed previously, however, principles of *res judicata* prevented the administrative law judge from relying on this evidence to find plaintiff disabled.  Plaintiff fails to point to any medical evidence in the record after December 15, 2004 that shows that she has a severe mental impairment, much less that she meets the criteria of a listing.  Although plaintiff asserts that she had a persistent nonorganic disturbance of the use of a limb and marked difficulties in maintaining concentration, persistence or pace and repeated episodes of decompensation, there is no medical evidence in the record to support this assertion.  The administrative law judge did not err in finding that plaintiff's mental impairment did not meet or equal a listed impairment.

## D.  Credibility

Plaintiff challenges the administrative law judge's determination that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1)

19

determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck, 357 F.3d at 702. When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence. Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible. Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions. SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c). See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

20

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility. Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000). In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong." Prochaska, 454 F.3d at 738; Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result. Shramek, 226 F.3d at 811. The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record. Skarbeck, 390 F. 3d at 505.

In assessing plaintiff's credibility, the administrative law judge considered relevant factors bearing on plaintiff's credibility, including her course of treatment, her inconsistent statements concerning her functional abilities and her daily activities. AR 19. Specifically, he found that plaintiff testified that plaintiff had tried chiropractic treatment and physical therapy which did not help but that she took Neurontin and amitriptyline, which she thought helped a little. The administrative law judge considered plaintiff's statements to her therapists in 2004 that she was able to perform full housekeeping chores and their observation that she was able to lift 40 pounds from floor to waist level and 30 pounds from

21

her waist to her crown without exhibiting any pain behaviors, both of which stood in stark contrast to her allegation of severe, unrelenting pain.  AR 19.

Plaintiff argues that she suffered from myofascial pain and that, because it is similar to fibromyalgia, the lack of objective medical findings was not a sufficient reason to reject her subjective symptoms.  Plaintiff is correct that an administrative law judge cannot rely solely on the lack of objective medical findings to determine that plaintiff's myalgia pain was not severe.   Sarchet v. Chater, 78 F. 3d 305, 307 (7th Cir. 1996)(fibromyalgia case). However, as plaintiff concedes, the administrative law judge did not state that he discounted her credibility because of the lack of objective medical evidence.   Nonetheless, plaintiff argues that the administrative law judge's decision implies that he did so.  I disagree.  Rather, as discussed above he considered her course of treatment, her daily activities and her functional abilities.  He also noted that plaintiff's treating sources had not made any observations that supported plaintiff's allegations of extreme pain.  These were adequate reasons for finding plaintiff not entirely credible.

In sum, plaintiff has not demonstrated that the administrative law judge's credibility assessment was patently wrong.  He considered the factors set forth in SSR 96-7p and built an accurate and logical bridge between the evidence and his conclusion that plaintiff's statements considering her limitations were not fully credible.  I see no reason to disturb the administrative law judge's credibility finding.

22

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security is AFFIRMED and plaintiff Rosemary Buehler's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 12th day of August, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

23